THE PEOPLE ex rel. WILLIAM H. CHURCHMAN, Appellant, *v.* THE BOARD OF TRUSTEES OF THE NEW YORK STATE INSTITUTION FOR THE BLIND, Respondent.

(Argued June 10, 1874; decided September 22, 1874.)

THIS was an appeal from a judgment of the General Term affirming a judgment of Special Term, denying the application of relator for a peremptory writ of mandamus requiring defendant to pay a claim for salary alleged to be due relator as superintendent of The New York State Institution for the Blind.

By chapter 587 of the Laws of 1865, a State institution for

the blind was authorized to be established.    The act provided for the appointment of five commissioners to select a site, three commissioners for the erection of buildings, with power, if they deemed it expedient, to hire buildings until those completed should be ready for occupation.    As soon as suitable accomodation should be provided, the governor was authorized to appoint nine trustees to take charge of the institution and organize by the appoinment of a president, a secretary, and adopting by-laws, rules, etc., for the transaction of business, with power, as soon as it should be necessary, to appoint a superintendent and fix his salary.    In 1866, trustees were appointed, and organized as a board, which board adopted the following resolution :

" *Resolved,* That William H. Churchman, of Indiana, be and he is hereby appointed to the superintendency of the New York State Institution for the Blind, and that his salary be fixed at $2,500 per year, with board and accommodations for himself and family, payment of salary to commence as soon as an appropriation is made by the legislature."

This resolution was communicated to said Churchman and by him accepted.    At the time of the appointment of trustees the commissioners had leased a building in Binghamton temporarily for the purposes of the institution.

Another act was passed in 1867 (chap. 744, Laws of 1867), conferring upon the board of trustees power to appoint a superintendent, and fix his salary.

It was subsequently agreed between the parties that the relator should enter upon his office at once and perform any service required pertaining thereto, but not to remove with his family to Binghamton until required, his regular salary not to commence until his removal to Binghamton, and the services rendered prior to such removal to be compensated for at a reasonable rate, but no payment to be demanded for either, until an appropriation by the legislature for the support of the institution.

At the time of the foregoing arrangements relator was superintendent of the Indiana Institute for Educating the Blind, at Indianapolis, on a salary, which place he continued to hold until after 1868, himself performing its duties

except when rendering services for the defendant, as hereinbefore stated, at which time he employed an assistant.

In pursuance of the agreement the relator, in the autumn of 1866, did perform valuable service for the institution at his home in Indianapolis the value of which did not appear save by a letter of relator to defendant, in which he estimated it at $1,000.

In November, 1866, the secretary of the board informed him by letter that he was directed, by resolution of the board, to invite him to enter upon his duties at Binghamton as early as possible. He came December 10th, 1866, and engaged in service pertaining to the institution until the 20th of February, 1867, when, at his request and with the assent of the board, he returned home to Indianapolis, to await the action of the legislature and subject to recall by the respondent. He came again to this State about April 1, 1867, and reported himself for duty, and remained one or two days, but was never recalled from Indiana by said board.

The first legislative appropriation for said institution was 22d April, 1867, which was for salary and expenses. The first appropriation for the purposes of the institution was the 8th of May, 1868.

On June 12, 1867, the board of trustees adopted the following resolution:

"*Resolved*, That $500 be appropriated for payment of salary to W. H. Churchman, superintendent, up to the present time; and that the secretary inform him that as no appropriation has been made by the legislature, that all salaries are discontinued from this date."

This resolution was communicated to the relator, accompanied by the $500, to which he sent the following reply:

"INDIANAPOLIS, *July* 6, 1867.

"STATE OF NEW YORK,        *To* W. H. CHURCHMAN, *Dr.*

"On account of salary as superintendent of New York State Institution for the Blind, from August 29, 1866, to June 12, 1867, as per allowance of board of trustees, $500.

"Received payment,

"W. H. CHURCHMAN."

On the 16th day of April, 1868, the relator sent to the board of trustees a formal resignation as superintendent, and a formal acceptance of the same was entered in the records of the board September, 1868.

No suitable accomodations were provided for the institution previous to September, 1868, and no pupils were received or instructed by it previous to that date.

In December, 1868, the relator presented a bill for arrear of salary from August 29, 1866, to June 12, 1867, claiming a balance of $1,469.16. On the 24th of March, 1869, said claim was by resolution audited and approved by the board. Before said resolution was accepted or acted upon by the relator, and on the 13th day of June, 1869, said resolution was rescinded by said board. The relator claimed the salary fixed from August, 29th 1866, to April, 16th 1868.

The court at Special Term denied the relief on the grounds: 1st. That by the original agreement the salary as superintendent was not to commence until an appropriation by the legislature "for the purposes of the institution," and no such appropriation was made until after the relator's resignation. 2d. By the modified agreement the salary was not to commence until such an appropriation and the removal of the relator with his family to Binghamton, but that he was to be compensated upon a *quantum meruit* and these conditions have not happened; in neither case did the right to a salary ever accrue. 3d. The relator's acceptance of the $500, upon the conditions imposed, operated as a satisfaction in full to that date, and terminated the contract. 4th. The relator having been employed in the same capacity on salary during the entire period claimed for in this action, had no right in equity to recover for the services herein claimed. *Held*, error; that the resolution did not postpone the commencement but only the payment of the salary until an appropriation was made; that the removal of the relator to Binghamton when called by the trustees was the event by which, under the new agreement, the salary was to commence, and upon which the compensation according to a *quantum meruit* was to cease; that the salary accordingly commenced December 10, 1866, and continued until June 12, 1867; that by the

resolution discontinuing salaries after that date, and the relator's acquiescence therein, he was concluded from claiming any compensation thereafter; that the receipt of the $500 was not, under the circumstances, in satisfaction of the entire claim, and that it was the duty of defendant to pay the salary up to June twelfth. Judgment was therefore ordered giving relator his salary from December 10, 1866, to June 12, 1867, leaving the $500 to be applied on services prior to December tenth.

*Henry R. Selden* for the appellant.

*Peck & Bowen* for the respondent.

ANDREWS, J., reads for reversal and to remit case to Supreme Court, with directions that a peremptory writ of mandamus issue requiring defendant to pay to relator $1,263.68, and interest from June 12, 1867.

All concur.

Ordered accordingly.